UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHISULA CHAMBERS, | CASE NO. 2:25-cv-01862-JNW |
| Plaintiff, | ORDER |
| v. | |
| UNIVERSITY OF WASHINGTON; AMY HAVERLAND; MORIAH JANKE; and MARLOWE RAMIREZ, | |
| Defendants. | |

## 1. INTRODUCTION

This matter comes before the Court on Defendant University of Washington's motion to dismiss, Dkt. No. 16; Defendants Amy Haverland and Moriah Janke's motion to dismiss, Dkt. No. 29; Defendants' motion to strike Plaintiff's Second Amended Complaint, Dkt. No. 50; and Plaintiff Chisula Chambers's motion to compel, Dkt. No. 40, and motion to extend the service deadline, Dkt. No. 41.

Having considered the briefing and the record, the Court strikes the Second Amended Complaint sua sponte; GRANTS in part both motions to dismiss;

ORDER - 1

DISMISSES Defendant Marlowe Ramirez for failure to serve; and DENIES the remaining motions.

## 2. BACKGROUND

The facts below are drawn from Plaintiff Chisula Chambers's First Amended Complaint ("FAC"), Dkt. No. 9, and are accepted as true for purposes of these motions. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

### 2.1 Chambers's education at UW School of Medicine.

Chambers is a Black, female veteran. Dkt. No. 9 at 2. She attended the University of Washington School of Medicine as a medical student from 2011 to 2015. *Id.* at 3. During her time as a student, Chambers faced "disparate treatment and exclusionary conduct" on the basis of her race and disability. *Id.* at 4–10. After being diagnosed with attention-deficit/hyperactivity disorder, UW officials referred Chambers to the Washington Physicians Health Program ("WPHP"), and "required [her] to take medication against her will, submit to invasive monitoring, and comply with rigid behavioral expectations." *Id.* at 4–5. After returning from medical leave, she alleges UW officials consistently scrutinized her in a way that was "not supportive, trauma-informed, or legally compliant." *Id.* at 8–9.

Chambers reported these and other incidents to the UW Ombudsman's Office and the University Complaint Investigation and Resolution Office ("UCIRO"). Dkt. *Id.* at 3. UCIRO closed her 2015 formal complaint, finding only that UW "could have done better." *Id.* at 3–4. Chambers filed a civil rights complaint with the U.S. Equal

ORDER - 2

Employment Opportunity Commission ("EEOC") in August 2015, but she never received a right-to-sue letter. *Id.* at 4.

### 2.2   Chambers's employment with UW Medical Center.

After completing her education, Chambers returned to the University of Washington and worked as a registered nurse at the UW Medical Center ("UWMC") from 2021 to 2023. Dkt. No. 9 at 10. She served on the DEI committee and acted as a trained Peer Supporter. *Id.* During her time at UWMC, Chambers claims she was subjected to discriminatory and retaliatory conduct. *Id.* at 11–12.

For example, Chambers experienced conflict with a white coworker. Dkt. No. 9 at 13. She agreed to mediate the conflict in a discussion with management present. *Id.* at 14. She was called into a meeting with the coworker, along with Defendants Amy Haverland, the Department Manager, and Defendant Moirah Janke, the Assistant Nurse Manager. *Id.* During the meeting, Chambers explained her issues with the coworker, including her history of "prying, correcting, and inserting herself into others' work without authority—behavior colloquially described today as that of a **'Karen.'"** *Id.* (emphasis in original). Haverland then asked Chambers to lead a department-wide discussion on implicit bias and racism in nursing. *Id.* Because of her leadership role in anti-racism education, Chambers alleges that Defendant Marlowe Ramirez antagonized her on a daily basis through sarcasm, second-guessing, and social isolation. *Id.* at 15.

In June 2023, another UWMC nurse "shoulder-checked" Chambers. Dkt. No. 9 at 17. Chambers reported the incident to Haverland and the hospital DEI

ORDER - 3

Director, but no investigation followed. *Id.* at 17–18. She escalated the matter to HR, which conducted an internal investigation and closed the complaint without substantiation on or about February 10, 2024. *Id.* at 18.

Chambers reported her experiences with racism, retaliation, and failure to accommodate her stress-related health conditions to HR and sought administrative leave to protect her employment status, benefits, and pension. Dkt. No. 9 at 9, 12, 18. UWMC denied her request for leave, telling her "there is no administrative leave available to support whistleblowing." *Id.* at 12. Chambers instead took medical leave for medical issues related to the hostile work environment. *Id.*

After some time on medical leave, UWMC asked Chambers to return to work or submit additional forms to extend the leave. Dkt. No. 9 at 17. Chambers failed to do so. *Id.* As a result, UWMC terminated her employment. *Id.*

## 2.3    Procedural history.

On August 22, 2025, Chambers filed a complaint against UW in King County Superior Court seeking $75 million. Dkt. No. 1-1. UW removed the case to federal court, and Chambers filed her First Amended Complaint on October 15, 2025. Dkt. No. 1, 9. The First Amended Complaint asserts eight claims against Defendants UW, Haverland, Janke, and Ramirez for violations of: (1) Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311; (2) Title VII,  42 U.S.C. § 2000e-2; (3) Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; (4) Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §

ORDER - 4

623; (5) 42 U.S.C. § 1981; (6) 42 U.S.C. § 1983; (7) Washington Law Against Discrimination ("WLAD"); and (8) negligent supervision. Dkt. No. 9 at 24–30.

Chambers filed a charge with the EEOC in 2015, but no later charge, and she filed a tort claim on September 30, 2025, only after commencing this lawsuit. Dkt. No. 9 at 4, 19. Defendants Haverland and Janke (together, the "Individual Defendants") and Defendant UW each move to dismiss. Dkt. Nos. 29, 16. The Court addresses these motions and others below.

### 3.  LEGAL STANDARD

To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555. Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible. *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But all inferences reasonably drawn from the facts must be construed in favor of the responding party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("We must accept all factual allegations

in the complaint as true and construe them in the light most favorable to the non-moving party.").

Under the Federal Rules of Civil Procedure, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Thus, a "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). But even under this liberal standard, a pro se plaintiff must allege sufficient facts to support the elements of a claim; the Court cannot supply essential elements not initially pled. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## 4.  DISCUSSION

### 4.1  The Second Amended Complaint and supporting declaration are stricken.

After both motions to dismiss were fully briefed, Chambers filed a Second Amended Complaint and supporting declaration. Chambers had already amended her complaint once as a matter of right, *see* Fed. R. Civ. P. 15(a)(1), so any further amendment thus required the Court's leave or Defendants' written consent, neither of which she obtained, *see* Fed. R. Civ. P. 15(a)(2).

Because the Second Amended Complaint was filed in violation of Rule 15(a)(2), it does not supersede the FAC. The FAC thus remains the operative pleading, and the Court evaluates the pending motions to dismiss against it. *See Hayes v. Idaho Corr. Ctr.*, 812 F. App'x 568, 569 (9th Cir. 2020) (district courts may strike pleadings filed without leave).

ORDER - 6

Accordingly, the Court STRIKES the Chambers's Second Amended Complaint and supporting declaration. Dkt. Nos. 43 and 44.

## 4.2    Conceded claims are dismissed.

Chambers concedes that her USERRA claim (Count I), Title VII claim (Count II), ADA claim (Count III), and ADEA claim (Count IV), should be dismissed as to Defendants Haverland and Janke. Dkt. No. 35 at 2–3. Chambers further concedes that her claims against the Individual Defendants in their official capacity are "duplicative" of her claims against UW and thus may be dismissed. *Id.* at 2. And during a conference with Defendant UW, Chambers confirmed that she is not asserting her Section 1983 claim against the University. Dkt. No. 17 ¶ 3; *accord* Dkt. No. 25 at 7.

The Court accordingly DISMISSES the following claims: (a) the USERRA, Title VII, ADA, and ADEA claims against Haverland and Janke in their personal capacities; (b) the damages claims against Haverland and Janke in their official capacities; and (c) the Section 1983 claim against UW.

## 4.3    Chambers's remaining claims against UW are dismissed.

Chambers alleges USERRA, Title VII, ADA, ADEA, Section 1981, WLAD, and negligent supervision claims against UW. Each of these claims fail.

### 4.3.1    Chambers fails to state a claim for relief under USERRA.

UW argues that Chambers's USERRA claim fails because she does not allege to have suffered any materially adverse employment action or retaliation based on her military service. Dkt. No. 16 at 20–22. The Court agrees.

ORDER - 7

"USERRA was enacted in 1994 'to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service.'" *Belaustegui v. Int'l Longshore & Warehouse Union*, 36 F.4th 919, 923 (9th Cir. 2022) (quoting 38 U.S.C. § 4301(a)(1)). Section 4311(a), USERRA's anti-discrimination provision, requires the service-member employee to first show, "by a preponderance of the evidence, that his or her protected status was a substantial or motivating factor in the adverse employment action." *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017) (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)). The action must be "materially adverse," meaning one that "significantly alters the terms and conditions of an employee's job, such as termination, demotion accompanied by a decrease in pay, or a material loss of benefits or responsibilities." *Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1271 (W.D. Wash. 2020) (quotation modified).

Chambers does not allege a materially adverse employment action tied to her military service. She alleges that her colleagues and supervisors were "dismissive" of her status as a veteran, *see* Dkt. No. 9 at 25–26, and that she was denied a scheduling accommodation for her PTSD, *see id.* at 21–22, but neither contention rises to the level of an adverse employment action under USERRA. Although Chambers was ultimately terminated, she does not allege that her termination was because of her service itself, as Section 4311(c)(1) requires. Rather, she claims her termination resulted from her failure to return from medical leave that was prompted by harassment that "exacerbated" her "service-connected PTSD," and that

ORDER - 8

she "faced demotions, denial of reassignment opportunities, and retaliatory performance reviews" after "invoking protections and requesting . . . accommodations" related to her military service. Dkt. No. 9 at 17, 26. These allegations do not state a cognizable USERRA claim, which requires Chambers to show that her "*service*, as distinct from a *disability* resulting from service, was a substantial or motivating factor in the employer's decision." *Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628, 633 (D.N.J. 2015) (emphasis in original). Accordingly, the Court finds that Chambers fails to state a claim under USERRA.

### 4.3.2    Chambers failed to exhaust her administrative remedies before bringing her Title VII, ADA, and ADEA claims.

UW next argues that Chambers's Title VII, ADA, and ADEA claims fail because she did not timely exhaust her administrative remedies. Dkt. No. 16 at 14–16. The Court agrees.

A plaintiff pursuing a Title VII, ADA, or ADEA claim must exhaust their administrative remedies with the EEOC before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA), 29 U.S.C. § 626(d)(1) (ADEA). *See also, e.g., MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1088 (9th Cir. 2006) (affirming dismissal of Title VII claims where the plaintiff failed to timely file an EEOC charge); *Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1100 (9th Cir. 1998) (holding that ADEA plaintiffs timely filed their EEOC charges); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1061–62 (9th Cir. 2006) (holding ADA plaintiff exhausted his administrative remedies). "In Washington, a plaintiff fails to properly exhaust her remedies if she either files her EEOC charge more than 300 days after

ORDER - 9

the employer's allegedly unlawful conduct, or if she files suit more than 90 days after receiving a right to sue notice from the EEOC." *Seidler v. Amazon*, No. C23-0816JLR, 2024 WL 97351, at *3 (W.D. Wash. Jan. 9, 2024).

Chambers does not claim to have filed a timely EEOC charge within 300 days of her termination from UW. She concedes as much in her response. *See* Dkt. No. 25 at 4–6. This exhaustion is mandatory and fatal to her claim. *See Novelozo v. Port of Seattle*, No. C25-111 JNW, 2025 WL 2390433, at *8 (W.D. Wash. Aug. 18, 2025) (citing *Fort Bend Cnty., Texas v. Davis*, 487 U.S. 541, 549 (2019)); *see also Topolski v. Washington State Dep't of Licensing*, No. 3:24-CV-05878-TMC, 2025 WL 1900805, at *4 (W.D. Wash. July 9, 2025) ("The failure to exhaust administrative remedies is a fatal defect which cannot be cured."). Accordingly, dismissal of these claims is warranted. *See Juarez v. Walmart Inc.*, No. 24-2844, 2025 WL 1983945, at *1 (9th Cir. July 17, 2025) (affirming dismissal of action upon plaintiff's failure to allege facts sufficient to show that he exhausted administrative remedies).

Chambers argues that she should be excused from the exhaustion requirement on equitable grounds. Dkt. No. 25 at 4–6. While true that the administrative exhaustion requirement "is subject to waiver, estoppel, and equitable tolling," *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)), those equitable doctrines do not apply here. Chambers contends that she "reasonably believe[d that] external filing would be futile," given UW's inaction related to her reports made to "HR, DI, and others." Dkt. No. 25 at 5. But Chambers's frustration with UW's internal grievance systems is not an actual impediment that prevented her from

ORDER - 10

contacting or filing a charge with the EEOC. Nor does her alleged failure to receive a right-to-sue letter on her 2015 charge excuse her from the administrative requirements necessary to bring a federal discrimination lawsuit.

Thus, the Court finds that Chambers failed to exhaust her administrative remedies before bringing her Title VII, ADA, and ADEA claims.

### 4.3.3    UW is immune from Chambers's Section 1981 claim.

UW argues it is immune as an arm of the state from Chambers's Section 1981 claim.[1] Dkt. No. 16 at 13–14. The Court agrees.

The Eleventh Amendment to the Constitution bars suit in federal court by citizens against a state or its agencies under certain federal laws "unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or [the] state has waived it." *Holley v. Cal. Dep't of Corr.,* 599 F.3d 1108, 1111 (9th Cir. 2010); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). A state may waive its immunity only by a "clear declaration," which is to be "strictly construed . . . in favor of the sovereign." *Sossamon*, 563 U.S. at 284–85. "Courts in this judicial district have noted that state universities – including [UW] – are an arm of the state entitled to Eleventh Amendment immunity." *Robinson v. Univ. of Wash.*, No. C15-1071RAJ, 2016 WL 4218399, at *8 (W.D. Wash. Aug. 9, 2016), *aff'd*, 691 F. App'x 882 (9th Cir. 2017) (collecting cases).

---

[1] UW makes a similar argument as to Chambers's ADA and ADEA claims. But because Chambers failed to exhaust her administrative remedies as to those claims, the Court does not address whether they are subject to sovereign immunity.

ORDER - 11

Chambers concedes that Section 1981 "does not create a cause of action against states in federal court for money damages." Dkt. No. 25 at 7 (citing *Pittman v. Or., Emp. Dep't*, 509 F.3d 1065, 1074 (9th Cir. 2007)). Courts in this district have held the same when UW is the named defendant. *See Woods v. Washington*, No. C10-117RSM, 2011 WL 31852, at *2 (W.D. Wash. Jan. 4, 2011), *aff'd*, 475 F. App'x 111 (9th Cir. 2012). The Court finds that UW is entitled to sovereign immunity.

### 4.3.4    Chambers failed to comply with the state tort claim statute.

UW argues that Chambers failed to comply with Washington state law requiring her to file a notice before bringing her WLAD and negligent supervision claims. Dkt No. 16 at 16–20. The Court agrees.

Plaintiffs seeking to sue the state of Washington must follow the guidelines set forth in RCW 4.92 et seq., which the legislature enacted "to abrogate[] sovereign immunity and establish[] procedures for suing the State." *Hyde v. Univ. of Washington Med. Ctr.*, 347 P.3d 918, 920 (Wash. Ct. App. 2015). These guidelines include those set forth in RCW 4.92.100 and .110, which preclude tort claims against the State, or against the state's officers, employees, or volunteers, unless the plaintiff first files a tort claim with the State's risk management office at least 60 days before commencing the action. *See id.* This pre-suit notice extends to claims brought against the state under WLAD. *See Blair v. Washington State Univ.*, 740 P.2d 1379, 1389 (Wash. 1987). "Dismissal is the proper remedy for failure to comply with these tort claim filing requirements." *Hyde*, 347 P.3d at 920; *see also Githinji v. Olympia Police Dep't,* No. C22-5138 MJP, 2023 WL 4492364, at *2 (W.D. Wash. July

12, 2023) (dismissing tort claims brought against Washington municipality for failure to comply with similar pre-suit tort notice statute).

Chambers filed her tort claim with UW's Office of Risk Management on September 29 or 30, 2025. Dkt. No. 9 at 19. But her lawsuit was filed in King County Superior Court on August 22, 2025, *before* she filed her tort claim. Dkt. No. 1-1. This post-suit filing did not comply with the pre-suit requirements of RCW 4.92, which are "are mandatory and operate as a condition precedent to recovery." *Mangaliman v. Wahington State DOT*, No. CV11-1591 RSM, 2014 WL 1255342, at *4 (W.D. Wash. Mar. 26, 2014) (citing *Levy v. State*, 957 P.2d 1272 (Wash. Ct. App. 1998)). The notice requirement "cannot be satisfied after a litigant is already inside the courthouse—it is a condition precedent to entering." *Beyhawck v. Washington State Patrol*, No. 3:25-CV-05995-DGE, 2026 WL 201216, at *2 (W.D. Wash. Jan. 27, 2026).

Chambers argues that the pre-suit notice provision does not require "perfect compliance," and that her demand letters to UW sent on February 26, 2025, and May 12, 2025, provided the state with actual notice and opportunity to investigate her potential claims, and thus substantially complied with RCW 4.92. Dkt. No. 25 at 6. But the statute requires that plaintiffs file a notice with the state Department of Enterprise Services' Office of Risk Management ("ORM"), which Chambers did not do.

"Substantial compliance . . . means that the 'statute has been followed sufficiently so as to carry out the intent for which the statute was adopted.'" *Sterling v. State*, 30 Wash. App. 2d 1042, 2024 WL 1620066, at *2, *review denied*,

ORDER - 13

556 P.3d 1104 (2024) (quoting *Lee v. Metro Parks Tacoma*, 335 P.3d 1014, 1017 (2014)). "The purpose of RCW 4.92.100(1) and .110 is to provide notice of claims to the state so that ORM can maintain a centralized claim tracking system and provide agencies with accurate and timely data on the status of liability claims." *Id.* Filing her tort claim with UW's Office of Risk Management did not put ORM on notice of her claim, so it could not track, value, and delegate the claim as part of its centralized system. Because notifying UW Claim Services of her claim did not sufficiently carry out the legislature's intentions behind RCW 4.92.100(1) and .110, Chambers did not substantially provide pre-suit notice. As a result, the Court finds that Chambers WLAD and negligent supervision claims cannot proceed.

## 4.4    Chambers's claims against Individual Defendants.

After Chambers's concessions, her remaining claims against the Individual Defendants in their personal capacity are Section 1981, Section 1983, WLAD, and negligent supervision.

### 4.4.1    Chambers fails to state a Section 1981 claim.

To state a plausible Section 1981 claim, plaintiffs must allege three essential elements: (1) they are a member of a racial minority; (2) the defendant intended to discriminate against them on the basis of race or color; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts). *Boparai v. Fred Meyer Co.*, No. 2:24-CV-02045-JNW, 2025 WL 1993414, at *1 (W.D. Wash. July 17, 2025). Additionally, plaintiffs must

ORDER - 14

show that the discriminatory conduct was a "but-for" cause of the injury. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013 (2020).

Looking to the second element, Chambers alleges that she was "denied . . . fair access to promotions, training, and contractual opportunities on the basis of race, affecting her economic prospects and opportunities for advancement." Dkt. No. 9 at 28. She also alleges that "[s]he was subjected to disparate discipline and denied the same resources and mentorship routinely provided to white employees," which "interfered with her contractual employment rights." *Id.* at 28–29.

But Chambers fails to connect the Individual Defendants to either of these allegations—she does not reference any specific trainings, promotions, or opportunities she was excluded from, let alone allege that the Individual Defendants denied her from those trainings. Chambers also does not allege Janke or Haverland subjected her to disciplinary action.

Facts should be construed in favor of Chambers as the non-moving party. *Fleming*, 581 F.3d at 925. Even so, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible. *Iqbal*, 556 U.S. at 678. Accordingly, without factual allegations to support her conclusions, the Court finds that Chambers fails to state a claim under Section 1981 against the Individual Defendants.

### 4.4.2    Chambers fails to state a Section 1983 claim because she fails to allege a constitutional violation.

"To prevail in a civil action against state actors for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws,' 42 U.S.C. § 1983, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived [them] of federal rights, privileges or immunities and (4) caused [them] damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163–64 (9th Cir. 2005) (citation modified). "Because § 1983 suits do not allow for the imposition of vicarious liability, a plaintiff making a claim against a government official in his or her individual capacity requires a showing that each government official defendant, through his or her own individual actions, has violated the Constitution." *Knight v. Brown*, 797 F. Supp. 2d 1107, 1136 (W.D. Wash. 2011), *aff'd*, 485 F. App'x 183 (9th Cir. 2012).

Chambers alleges that the Individual Defendants violated three constitutional rights: due process, equal protection, and free speech. Chambers does not allege any facts from which the Court can reasonably construe a due process claim so the Court moves to her equal protection allegations.

Chambers claims the Individual Defendants violated the Equal Protection clause because they treated her "safety and complaints" with deliberate indifference. Dkt. No. 9 at 29. To plead an equal protection violation, a plaintiff must allege that the Individual Defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton*, 425 F.3d at 1166 (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686

(9th Cir. 2001), *abrogated on other grounds*). Chambers alleges that the Individual Defendants met with her and a white nurse to discuss interpersonal issues, during which Haverland offered that Chambers lead a department-wide discussion on implicit bias and racism in nursing. Dkt. No. 9 at 14. But these allegations fall short of supporting an inference of discriminatory intent by the Independent Defendants. Chambers also alleges that a different nurse "deliberately shoulder-checked" her while walking past, but "no investigation of protective action followed" Chambers report to Haverland. Dkt. No. 9 at 17. Again, however, Chambers did not that allege an individual belonging to a different class was in a similar situation—reporting similar behavior to Haverland—or allege facts that demonstrate discriminatory intent by Haverland. *See Thornton*, 425 F.3d at 1167.

Chambers also alleges that the Individual Defendants violated the First Amendment because they "punished her for speech on matters of public concern—systemic racism and patient equity[.]" Dkt. No. 9 at 29. She states that when she brought up "clear disparities in patient care," Haverland "became angry and questioned [Chambers's] professional judgment." Dkt. No. 9 at 15.

To state a First Amendment retaliation claim in the employment context based on protected speech, a plaintiff must allege that their "protected speech was a substantial or motivating factor in the adverse employment action." *Jensen v. Brown*, 131 F.4th 677, 689 (9th Cir. 2025) (internal quotation marks omitted). An adverse employment action is any retaliation that would chill the exercise of protected First Amendment rights, and need not be severe. *Id.* Chambers fails to

allege any action that the Individual Defendants took against her. As a result, her claim does not allege a crucial element of a First Amendment claim.

### 4.4.3    Chambers did not comply with the state tort statute.

The Court dismisses Chambers's WLAD and negligent supervision claims against the Individual Defendants for the same reasons as it dismissed Chambers's state claims against UW—Chambers failed to comply with the pre-suit notice requirement under RCW 4.92.100 and .110.

## 4.5    Defendant Ramirez is dismissed.

Federal Rule of Civil Procedure 4(m) requires service within ninety days after a complaint is filed. "If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). But the Court may extend the 90-day deadline for service "if the plaintiff shows good cause for the failure[.]" *Id.* "The court's discretion to choose between dismissal without prejudice and an extension of time under Rule 4(m) is broad." *Jacobsen v. Driscoll*, No. C16-0298JLR, 2016 WL 4479916, at *3 (W.D. Wash. Aug. 25, 2016).

Chambers added Ramirez as a defendant on October 15, 2025, making the service deadline January 13, 2026. On December 16, 2025, the Court denied Chambers's motion to serve Ramirez by email, finding no good cause where Chambers had "simply tried, and failed, to locate Ramirez[.]" Dkt. No. 31 at 3. The Court also warned failing to serve Ramirez by January 13, 2026, may lead to

ORDER - 18

dismissal of Chambers's action against Ramirez without prejudice. *Id.* at 4. The deadline passed without service.

Nearly three months later, Chambers filed two motions: one to compel UW to disclose Ramirez's last known address, Dkt. No. 40, and one to extend the service deadline by sixty days, Dkt. No. 41. After UW opposed both, Dkt. Nos. 45, 46, Chambers filed a supplemental declaration from her process-server, C. Bey El, and an Affidavit of Service that she states was prepared in December 2025 but went unfiled due to "an administrative oversight." Dkt. Nos. 48 ¶ 4. Chambers argues that she acted with "reasonable diligence" because she tried to serve Ramirez "on at least five separate occasions." Dkt. Nos. 41 at 1; 42 ¶ 3. Chambers claims good cause exists because "Ramirez has been difficult to locate and serve despite repeated efforts." Dkt. No. 41 at 1.

This explanation falls short of establishing good cause. Given Chambers provides no information about her efforts to locate Ramirez, it's not clear what is causing months-long delay as there is no evidence that Ramirez has evaded service or concealed his whereabouts. Moreover, some of Chambers's attempts were not valid service—Chambers's agent attests to simply mailing documents to "addresses believed to be associated with . . . Ramirez," even though Chambers did not obtain leave from the Court to serve by mail. *See* Dkt. No. 41 at 2 ¶ 4. *See* Fed. R. Civ. P. 4(e)(1) (someone who is "not a party" can serve a copy of the summons and complaint by "following state law for serving a summons . . . in the state where the district court is located or where service is made); Washington CR 4(d)(4)

ORDER - 19

(Washington permits service by mail only in circumstances justifying service by publication).

The motion to extend the service deadline, Dkt. No. 41, is therefore DENIED. The motion to compel UW to disclose Ramirez's last known address, Dkt. No. 40, is DENIED as moot— and, in any event, fails on its own terms because UW has confirmed the address was already in Chambers's possession. Dkt. No. 47 ¶ 2. Chambers's claims against Ramirez are DISMISSED WITHOUT PREJUDICE.

### 4.6    Leave to amend.

Courts are not to "dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)). The Court takes this obligation seriously. Given the problems identified above, perhaps amendment is futile, but the Court will provide Chambers a final opportunity to allege a plausible case against Defendants. Specifically, Chambers may re-plead her USERRA, Title VII, ADA, ADEA, WLAD, and negligent supervision claims against UW and her Section 1981, Section 1983, WLAD, and negligent supervision claims against the Individual Defendants in their personal capacity. The Court denies Chambers leave to amend the claims she's conceded and her Section 1981 claim against UW given that it is barred by Eleventh Amendment immunity.

The Court declines to grant Chambers leave to amend without first requiring her to comply with Local Civil Rule 15, which provides that a "party who moves for

ORDER - 20

leave to amend a pleading . . . must attach a copy of the proposed amended pleading as an exhibit to the motion or stipulated motion," and allow briefing both in support of an opposition to amendment. Chambers must move to amend her complaint by no later than 14 days from the date of this Order.

### 5. CONCLUSION

In sum, the Court ORDERS as follows:

1. Defendant University of Washington's motion to dismiss, Dkt. No. 16, is GRANTED. Chambers's USERRA, Title VII, ADA, ADEA, WLAD, and negligent supervision claims against UW are DISMISSED WITHOUT PREJUDICE and with leave to amend as set forth the above. Chambers's Section 1981 and Section 1983 claims against UW are DISMISSESD WITH PREJUDICE.

2. The Individual Defendants' motion to dismiss, Dkt. No. 29, is GRANTED in part. Chambers's Section 1981, Section 1983, WLAD, and negligent supervision claims against the Individual Defendants are DISMISSED WITHOUT PREJUDICE and with leave to amend as set forth above. The Court DISMISSES WITH PREJUDICE Chambers's USERRA, Title VII, ADA, and ADEA against the Individual Defendants.

3. The Court STRIKES the document styled as the "Second Amended Complaint" and "Declaration of Chisula Chambers in support of Second Amended Complaint" as procedurally improper, Dkt. Nos. 43, 44.

ORDER - 21

4.  The Court DENIES Chambers's motion to extend the service deadline, Dkt. No. 41, and DISMISSES WITHOUT PREJUDICE her claims against Ramirez.

5.  Chambers's motion to compel, Dkt. No. 40, is DENIED as moot.

6.  Defendants' motion to strike, Dkt. No. 50, is DENIED as moot.

7.  Any motion for leave to amend the complaint must be filed within FOURTEEN (14) days of this Order, in compliance with Local Civil Rule 15 and the limitations set forth above.

Dated this 30th day of April, 2026.

Jamal N. Whitehead
United States District Judge

ORDER - 22