UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHISULA CHAMBERS,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF WASHINGTON, AMY HAVERLAND, and MORIAH JANKE,<br><br>Defendants. | CASE NO. 2:25-cv-01862-JNW<br><br>DISMISSAL ORDER |

## 1. INTRODUCTION

Plaintiff Chisula Chambers is a Black, female veteran. She worked as a registered nurse at the University of Washington Medical Center ("UWMC") where she says she faced discrimination and retaliation. UWMC fired her in February 2025, "following issues relating to leave documentation and return-to-work processes." Dkt. No. 54-1 ¶¶ 90, 94.

Proceeding pro se, Chambers sued the University of Washington in state court. After UW removed the case, she filed a First Amended Complaint that added three individual Defendants: Nurse Manager Amy Haverland, Assistant Nurse

Manager Moriah Janke, and Assistant Nurse Manager Marlowe Ramirez. Dkt. No. 9. The Court granted Defendants' motion to dismiss in part but gave Chambers a final chance to replead certain claims.

Chambers now moves for leave to file a Second Amended Complaint ("SAC"). Dkt. No. 54. Defendants UW, Haverland, and Janke respond that the proposed amended pleading is futile. Having considered the motion, the response, the reply, all supporting materials, and the relevant law, the Court DENIES Chambers's motion for leave to file the proposed SAC and DISMISSES all claims with prejudice.

## 2. LEGAL STANDARD

Under Rule 15(a), leave to amend must be given freely as required by justice. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). "This policy is 'to be applied with extreme liberality.'" *Neaman v. Wash. State Dep't of Corr.*, No. C24-5176 BHS, 2024 WL 3845710, at *1 (W.D. Wash. 2024) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). Courts consider five factors when determining whether to grant leave to amend under Rule 15: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended [its pleadings]." *United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th Cir. 2011). "'Futility alone can justify the denial of a motion to amend.'" *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (quoting *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003)).

To decide whether amendment would be futile, the Court asks whether the proposed pleading could survive a motion to dismiss, accepting its factual

allegations as true. *Utherverse Gaming LLC v. Epic Gaming, Inc.*, No. 2:21-cv-00799-RSM-TLF, 2023 WL 4908304, at *2, 4 (W.D. Wash. July 10, 2023). Because Chambers proceeds pro se, the Court construes her proposed pleading liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but it cannot supply essential elements of her claims that were not pled, *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## 3. DISCUSSION

Defendants argue all claims in the proposed SAC are futile because Chambers fails to state a plausible claim. The Court agrees.[1]

### 3.1 The Court excludes time-barred allegations.

As a threshold issue, the Court notes that many allegations in the proposed SAC are time-barred. Chambers alleges discrimination and retaliation that occurred when she was a UW medical student from 2011 to 2015. Chambers did not file suit until around ten years later on August 22, 2025. This conduct occurred too long ago to establish Chambers's claims.

[1] The proposed SAC includes claims against Marlowe Ramirez. The Court dismissed Ramirez from this suit, finding that Chambers did not establish good cause for failing to serve him under Rule 4(m). Dkt. No. 53 at 19. Although the Court dismissed all claims against Ramirez without prejudice, it did not grant Chambers leave to amend with respect to those claims. Instead, leave to amend was limited to certain claims against the "Individual Defendants in their personal capacity." *Id.* at 20. The Court defined "Individual Defendants" as "Defendants Haverland and Janke." *Id.* at 5. Accordingly, the Court does not consider the proposed claims against Ramirez.

Specifically, Washington Law Against Discrimination ("WLAD"), negligent supervision, and Section 1983 claims are subject to a three-year statute of limitations, while claims under Section 1981 must be brought within four years. *Antonius v. King Cnty.*, 103 P.3d 729, 732 (Wash. 2004) (WLAD claims "must be brought within three years under the general three-year statute of limitations"); *Hong v. Bank of Am., N.A.*, No. C20-1667RSM, 2021 WL 3207684, at *6 (W.D. Wash. July 29, 2021), *aff'd sub nom. Hong v. Bank of Am., NA*, No. 21-35742, 2022 WL 2235469 (9th Cir. June 22, 2022) ("Negligent supervision is subject to a three-year statute of limitations."); *Beyhawck v. Washington State Patrol*, No. 3:25-CV-05995-DGE, 2026 WL 201216, at *2 (W.D. Wash. Jan. 27, 2026) (citing *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) ("[T]he limitations period for [a] § 1983 claim[] is three years.")); *Shepherd v. City of Seattle*, No. 2:22-CV-00019-SAB, 2023 WL 2185870, at *2 (W.D. Wash. Feb. 23, 2023), *aff'd*, No. 23-35195, 2024 WL 4100247 (9th Cir. Sept. 6, 2024) ("[C]laims under § 1981 are governed by the federal 'catch-all' four-year statute of limitations period.").

Chambers responds that equitable tolling saves these allegations. Dkt. No. 57 at 6–7. But Washington law tolls a limitations period only when the defendant acted in bad faith, deceived the plaintiff, or gave false assurances, and the plaintiff acted diligently—a narrow doctrine, used sparingly. *Beyhawck*, 2026 WL 201216, at *4 (citing *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998)). Chambers describes her own diligence at length. She does not allege that anyone deceived her about her claims or assured her that she need not bring them. Tolling does not apply.

Accordingly, the Court sets aside the allegations about Chambers's time as a medical student and turns to the conduct falling within the limitations period. No amendment can bring that older conduct back inside the limitations period, so any claim resting on it is futile.

### 3.2 Chambers failed to comply with the state tort claim statute.

The Court previously found Chambers did not comply with the Washington statute requiring litigants to notify the Department of Enterprise Services' Office of Risk Management (ORM), RCW 4.92, before filing a tort claim against the state. Dkt. No. 53 at 12–13. Chambers does not allege new facts that alter the Court's original finding. She relies instead on generalized allegations as well as her accommodation requests, HR complaints, and "UW's awareness of longstanding race-related concerns affecting Black professionals within affiliated healthcare and educational environments." Dkt. No. 54-1 ¶¶ 106–118, 142 ("Prior to initiating litigation, Plaintiff provided pre-suit notice through written correspondence and certified communications sufficient to place UW on notice of the claims and concerns described [in the proposed SAC]."). These allegations are insufficient to cure the defect. Nor can Chambers cure the defect now. She asserts in her motion—though not in the proposed SAC—that she has since filed a tort claim with ORM. Dkt. No. 54 at 5. Filing one today cannot change when she filed suit, and the statute turns on that sequence. Chambers offers nothing more—she does not say when she presented the claim, what it contained, or whether sixty days passed before she

sued. Because that defect predates this case, no amendment can fix it. The WLAD and negligence claims against UW are thus futile.

**3.3 The proposed Section 1983 claims do not allege a constitutional violation.**

Chambers alleges that Haverland and Janke violated her rights to procedural due process, First Amendment free speech, substantive due process, and equal protection. Defendants argue that both are entitled to qualified immunity. Dkt. No. 56 at 13.

"Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017). To determine whether qualified immunity applies, courts must determine "(1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)). A court may take qualified immunity's two prongs "in whichever order would expedite resolution of the case." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (citing *Pearson*, 555 U.S. at 236–239). Chambers's claims fail at the first prong: she does not allege a constitutional violation by either Defendant.

"A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts,

or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citation modified). The proposed SAC is 54 pages long and yet the allegations against Haverland and Janke are sparse:

> Haverland failed to follow UW Policies and Procedures after [Chambers] reported racialized aggression, workplace safety concerns, accommodation concerns, retaliation, and discriminatory treatment; failed to provide safety planning; failed to ensure successful investigation completion; discouraged or failed to support accommodation-related requests; and participated in or supported termination-related proceedings.
>
> [Janke], against UW Policies and Procedures, discouraged [Chambers] from pursuing formal accommodations after [Chambers] disclosed ADHD-related scheduling difficulties; failed to direct [Chambers] into the accommodation process; failed to address reported racialized misconduct[,] and participated in termination-related decision-making despite unresolved concerns.

*See, e.g.*, Dkt. No. 54-1 ¶ 112. Nearly every clause describes something Haverland or Janke did not do. The one clause describing action—that each "participated in" termination proceedings—never says what either of them did. And when the proposed SAC identifies who ran the process that ended Chambers's employment, it names other people who are not Defendants. *See id.* ¶ 145(d)–(e). None of these allegations establishes a Section 1983 claim, and certainly not one that survives qualified immunity analysis.

### 3.3.1 Procedural due process.

"A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Houston v.*

*Maricopa, Cnty. of, Arizona*, 116 F.4th 935, 945 (9th Cir. 2024) (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (alteration in original)). Defendants say Chambers identifies no protected interest at all. The Court need not decide that, because even assuming Chambers had a property interest in her job, the proposed SAC does not identify a procedural protection that Haverland or Janke should have provided that was not received. Instead, Chambers claims they denied her "[e]mployment due process/termination process" because "before termination on or about February 10, 2025, UW failed to provide a fair and impartial predetermination process because individuals connected to [Chambers's] unresolved complaints, HR reports, accommodation concerns, and unsafe-work-environment reports participated in or influenced the termination process" before these concerns were resolved. Dkt. No. 54-1 ¶ 150.

In the context of public employment, an employee "is entitled to oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Here, Chambers's own allegations show both notice and an opportunity to be heard before her termination, even though she objects to UWMC's determination. *See* Dkt. No. 54-1 ¶¶ 90, 91, 93 ("[Chambers] was ultimately recommended for termination following issues relating to leave documentation and return-to-work processes."); ("[Chambers] responded to the proposed termination and informed [UWMC] that . . . [she] did not feel safe returning to work . . . while investigations and concerns remained unresolved" and "the investigative and accommodation processes had not been procedurally

completed.”); (UWMC terminated Chambers without “flesh[ing] out [her] concerns . . . [and] adequately addressing the underlying issues [she] had repeatedly reported.”). Even accepting as true all allegations in the proposed SAC, there is no procedural due process violation based on lack of notice and opportunity to tell her side of the story.

Chambers pleads two other procedural theories, and both fail for reasons already given. She claims she was denied “[e]ducational due process” and “[a]ccommodation-related due process.” *Id.* ¶ 150(a)–(b). Each rests on time-barred events or they describe conduct by people who are not parties here.

**3.3.2 First Amendment retaliation.**

The Court dismissed the First Amendment retaliation claim raised in Chambers’s First Amended Complaint because she failed to allege any adverse employment action that Janke and Haverland took against her. Dkt. No. 53 at 17–18 (citing *Jensen v. Brown*, 131 F.4th 677, 689 (9th Cir. 2025) (finding that an adverse employment action is any retaliation that would chill the exercise of protected First Amendment rights)).

The proposed SAC fares no better. It alleges that after Chambers “began speaking, teaching, and advocating regarding racism, bias, equity, and the lived experiences of Black nurses and Black patients within the UW healthcare system,” “Defendants and UW-affiliated decision-makers responded . . . with heightened scrutiny, failure to investigate, reputational harm, isolation, and retaliatory treatment.” Dkt. No. 54-1 ¶ 160. But the proposed SAC states no facts from which

the Court can infer that Haverland and Janke applied heightened scrutiny toward Chambers, harmed her reputation, or isolated her.

The proposed SAC also does not establish an adverse action based on Haverland and Janke's alleged "failure to investigate." In June 2022, Chambers "refused to engage privately with [a co-worker] without mediation because [Chambers] believed [her co-worker] had been targeting Black employees." Dkt. No. 54-1 ¶ 160. After the co-worker reported Chambers to management, Chambers met with Haverland and Janke and "had to defend her boundary." *Id.* On June 18, 2023, Chambers texted Haverland to report a co-worker who refused to give Chambers a patient report and "bumped [Chambers] with her hip on the way out of the room." Dkt. No. 54-1 ¶ 95. A few days later, Chambers met with Haverland and another HR employee to "formally report" racial discrimination and safety issues and followed up with an email. *Id.* ¶¶ 97–98. On August 11, 2023, an HR employee (not Haverland) met with Chambers and informed her they "found none of [her] allegations substantiated." *Id.* ¶ 101. It's not clear how Haverland and Janke are responsible for HR's determination or what they should have done to investigate. As a result, there is no alleged adverse action.

**3.3.3 Substantive due process.**

To state a substantive due process claim, a plaintiff "as a threshold matter" must allege "that [the defendant] deprived [her] of a constitutionally protected life, liberty or property interest." *Dodge v. Evergreen Sch. Dist.*, 513 F. Supp. 3d 1286, 1298 (W.D. Wash. 2021) (citing *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir.

2008)). The proposed SAC identifies the following liberty interests: "bodily autonomy, personal medical decision-making, educational participation, professional advancement, and psychological integrity." Dkt. No. 54-1 ¶ 188. But the actions allegedly taken by Haverland and Janke do not deprive Chambers of any of these rights.

What remains does not deprive Chambers of any protected interests. The proposed SAC states that "Haverland failed to provide comparable support or accountability after [Chambers] reported racialized mistreatment and [an] unsafe workplace" and "Janke discouraged accommodation requests." *Id.* ¶ 193. But "[t]he Due Process Clause does not 'guarantee employees a workplace that is free of unreasonable risks of harm,' nor does it guarantee against 'incorrect or ill-advised personnel decisions.' Furthermore, there is no constitutional due process right to 'have an investigation carried out in a particular way,' even when the plaintiff is the target of the investigation." *Dodge*, 513 F. Supp. 3d at 1299 (citations omitted). Thus, there is no deprivation.

#### 3.3.4 Equal protection.

The Court dismissed the equal protection claim alleged in Chambers's First Amended Complaint because it fell short of supporting an inference of discriminatory intent by Haverland and Janke. Dkt. No. 53 at 17. To plead an equal protection violation, a plaintiff must allege that the defendant "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)

(quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), abrogated on other grounds).

The proposed SAC does not point to animosity on behalf of Janke. Regarding Haverland, Chambers argues the Court should infer animus because Haverland "participated in or permitted a management response in which . . . a white or non-Black . . . nurse, received personalized supervisory attention after complaining about [Chambers's] workplace boundary," while Chambers's complaints did not receive comparable "accountability measure[s], safety planning, or corrective intervention." Dkt. No. 54-1 ¶ 184. But the Court has already explained why Haverland's conduct is not an adverse action. For the same reasons, the Court cannot infer any discriminatory intent where it's not clear that Haverland did anything objectionable in response to Chambers's reports.

**3.4 The proposed SAC does not allege a Section 1981 claim.**

To state a plausible Section 1981 claim, plaintiffs must allege three essential elements: (1) they are a member of a racial minority; (2) the defendant intended to discriminate against them on the basis of race or color; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts). *Boparai v. Fred Meyer Co.*, No. 2:24-CV-02045-JNW, 2025 WL 1993414, at *1 (W.D. Wash. July 17, 2025). Plaintiffs must also allege that the discrimination was a but-for cause of the injury. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020).

The Court dismissed the Section 1981 claim raised in the First Amended Complaint because Chambers failed to allege that Haverland or Janke denied her any trainings, promotions, or opportunities or subjected her to disciplinary action—much less that they did so because of her race. The proposed SAC does not cure these deficiencies and fails to allege new facts that would establish a Section 1981 claim. Accordingly, the claim is futile.

### 3.5 Further amendment would be futile.

For the reasons given above, every claim in the proposed SAC is futile. The Court does not end a pro se litigant's case lightly, and it may deny leave outright only when it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). That standard is met here. The limitations and presentment defects cannot be cured at all. And as to the rest, the Court identified the missing facts in April, Dkt. No. 53 at 15–18, and Chambers's third pleading does not supply them. That she seeks amendment in good faith does not change the result, because futility alone supports denial. *Johnson*, 356 F.3d at 1077; *see also City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (discretion to deny leave is "particularly broad" where the plaintiff has previously amended).

## 4. CONCLUSION

Chambers's motion for leave to file a SAC is DENIED because further amendment would be futile. Chambers's remaining claims against UW, Haverland,

and Janke are therefore DISMISSED WITH PREJUDICE. The Clerk is directed to close this case.

Dated this 8th day of September, 2026.

Jamal N. Whitehead
United States District Judge